COMMONWEALTH *vs.* WILLIAM A. CROSSCUP.

Middlesex. September 15, 1975. — December 17, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Motor Vehicle,* License to operate. *Notice. Constitutional Law,* Due process of law. *Evidence,* Letter, Presumptions and burden of proof. *Words,* "Prima facie."

In order to convict a defendant charged with driving after suspension of his license to operate a motor vehicle in violation of G. L. c. 90, § 23, proof of receipt of the suspension notice is required, mere proof of mailing being insufficient. [231-233]

Notice of suspension of a license to operate a motor vehicle is received when possession or control of the notice passes to the operator, a member of his household or someone who customarily acts for him in handling his mail, or when such possession or control would have passed to the operator or such other person but for negligence attributable to the operator. [239]

Proper mailing of a notice suspending a license to operate a motor vehicle is prima facie evidence of its receipt by the operator. [239]

At a criminal trial there was error in the judge's refusal to instruct the jury that in order to find the defendant guilty of operating a motor vehicle while his license was suspended, the jury must find that he received notice of the suspension. [239-240]

At a trial of complaints charging the defendant with operating a motor vehicle while his license was suspended it was error to exclude, over the defendant's objection, evidence relevant to nonreceipt of the suspension notice. [241-242]

THREE COMPLAINTS received and sworn to in the First District Court of Eastern Middlesex, two on August 16, 1973, and one on August 20, 1973.

On appeal to the jury session of the Third District Court of Eastern Middlesex, the cases were tried before *Lack, J.*

*Michael D. Cutler* for the defendant.

*Bonnie H. MacLeod-Griffin,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. After the defendant Crosscup (appellant here) had been convicted of speeding in Newburyport, for which he paid a fine, the Registrar of Motor Vehicles started proceedings to suspend his license temporarily on the ground that the registrar has "reason to believe that [the defendant] did improperly operate a motor vehicle." The registrar followed the procedures for suspension set out in G. L. c. 90, §§ 22(*b*), (*d*): he sent a notice of intention to suspend to the defendant at his correct address, and, following the defendant's failure to request a hearing, he sent, also to the correct address, a notice dated February 27, 1973, declaring a fifteen-day suspension. According to normal practice, the notices were sent by first class mail.

The second notice directed the defendant to deliver his license to the registry and to desist from operating a motor vehicle until his license was reinstated. The defendant did not comply. Everett police arrested him when he was observed operating a vehicle on August 15, 1973, and he was charged the next day with violations of G. L. c. 90, § 23, in that he had operated a vehicle while his license was suspended on August 15, and also on the previous May 21 and 23; he was also charged with a speeding violation on May 21.

After conviction in Malden District Court of all charges, the defendant appealed to the jury-of-six session of the Third District Court of Eastern Middlesex. He moved at the threshold to dismiss on the ground (among others) that a conviction resulting from nonreceipt of the registry notice provided by the statute would lack due process. The judge in the absence of the jury received evidence under the motion to dismiss; he admitted some testimony on the question whether the defendant had in fact received the notice, but over the defendant's objection he rejected other evidence on the matter (to be described below), and he finally denied the motion. The judge had evidently reached the conclusion that receipt was immaterial, for at the trial to the jury he denied the defendant's motion for an instruction that "if the defendant did not receive notice that his license had been suspended, . . . the jury must find him not guilty of operating a motor vehicle after his license had been suspended." The judge also excluded, again over objection, evidence offered by the defendant tending to prove nonreceipt of the registry notice.

The defendant was convicted on all counts and fined. The case is before us on a second substitute bill of exceptions addressed only to the suspension convictions.

The Commonwealth contends that criminal liability for driving during suspension of license may be established without a showing of receipt of notice of suspension (or knowledge of it). As the procedure looking to license suspension requires mailing of notices to the operator (see G. L. c. 90, § 22, and discussion below), the Commonwealth's position is, in essence, that the notices need only have been properly mailed and evidence of nonreceipt should be excluded. The defendant on his part argues in his brief as if the prosecution must show the defendant's actual knowledge of his suspension, but in oral argument he appeared to agree — and in all events this is a sensible position, in the light of the heroic enforcement problems

that would otherwise arise[1] — that the Commonwealth need only prove receipt of notice, so that it would be enough if the notice was received in the household, even if the defendant did not in fact see it. We take it that the true conflict narrows to whether mere proof of mailing suffices, or, on the contrary, proof of receipt is required. (That the fact of mailing is "prima facie evidence" of receipt — see point 2 [b] below — still further narrows the conflict as a practical matter.)

First, we show by an analysis of the statute that proof of receipt is required (of either the notice of suspension or of the intention to suspend).[2] If there were ambiguity in the statute, the same conclusion would be supported by canons of interpretation, including the one favoring a reading that avoids constitutional doubt. Second, we examine the rulings of the trial judge in the light of the receipt requirement and hold that there was error.

1. *Whether proof of receipt is required.* General Laws c. 90, § 23, as amended through St. 1970, c. 186, reads in part as follows, the words directly relevant being italicized: *"Any person convicted of operating a motor vehicle after his license to operate has been suspended or revoked,* or after notice of the suspension or revocation of his right to operate a motor vehicle without a license has

---

[1] The difficulties in enforcing a suspension statute that required a showing of knowing failure to obey the suspension order are demonstrated by the experience with enforcement of the selective service laws. See *United States* v. *Simmons,* 476 F.2d 33, 34-35 (9th Cir. 1973); *United States* v. *Booth,* 454 F.2d 318, 322 (6th Cir. 1972); *United States* v. *Seligson,* 377 F. Supp. 638, 642-643 (S.D.N.Y.), aff'd, 497 F.2d 920 (2d Cir. 1974).

[2] The notice of intention to suspend conveys notice of imminent registry action and hence proof of receipt of this notice alone should be adequate to support conviction.

We put to one side, as irrelevant here, the question whether there may be instances where an operator who has been involved in an episode which calls imperatively for suspension of license, as he might well be expected to know, could be validly convicted under the statute although he demonstrated nonreceipt of the notice.

been issued by the registrar and received by such person or by his agent or employer, *and prior to the restoration of such license* or right to operate *or to the issuance to him of a new license to operate,* . . . *shall* . . . *be punished for a first offence by a fine of not less than fifty nor more than one hundred dollars or by imprisonment for not more than ten days, or both* . . . ."

(a) The italicized language labels the offense and describes the punishment for it, but does not itself offer much assistance on the precise question at bar. However, the statutory procedure for suspension of an operator's license laid out in the proceeding section, G. L. c. 90, § 22 (and already adverted to in the statement of facts above), is instructive on the matter. Except where continuing operation by a driver "constitutes an immediate threat to the public safety" that warrants immediate action (see G. L. c. 90, § 22 [*a*]), the registrar is obliged to send a notice of intention to suspend a license at least fourteen days prior to suspension (see § 22 [*b*]). The notice must state the reason for the action and inform the operator of his right to request a hearing as to just cause. If a hearing is requested, it must be granted and the license may not be suspended until its completion. Failure to request a hearing is a waiver of the right. In any event, the registrar, if he decides to suspend, must send a further notice informing the operator of that fact. § 22 (*d*).[3] The operator may then appeal to an administrative board (§ 28) and may obtain further judicial review under the State Administrative Procedure Act, G. L. c. 30A. See *Poitras* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds,* 356 Mass. 510 (1969). The whole process for suspension, with its ample provision for warning the operator so that he can protect his interest, strongly suggests that it is a condition of

[3] Section 22 (*d*) also provides that the notices shall be in writing and shall be mailed to the operator's last address as appearing on the registrar's records or to his last and normal place of abode.

conviction of the offense that the operator shall be shown to have received notice of suspension or of the intention to suspend.

Strengthening this conclusion — and, incidentally, indicating that receipt is enough without showing actual knowledge of suspension — is the unitalicized language of § 23, above quoted, dealing with the offense of operating a vehicle when one's right to do so without a license has been suspended or revoked. The class of operators affected includes, among others, holders of learners' permits or valid out-of-State licenses. See G. L. c. 90, §§ 8B, 10. Section 23 plainly indicates that it must be shown for conviction of persons in this class that notice of suspension was received; and that receipt, without actual knowledge, suffices is indicated by the reference to receipt by the operator's agent or employer. On the face of things there is no reason for a difference of treatment in this respect between persons entitled to drive without a domestic license, and those entitled to drive by reason of holding such a license. The most plausible reason for dealing expressly in § 23 with the question of notice to the former group, but not the latter, is that the latter is covered by the detailed provisions of § 22. The results, however, should be, and, we think, are in substance the same.

(b) The Commonwealth's argument that conviction may rest on proof of mailing without more must attempt an artificial distinction between the two groups of offenders dealt with in the quoted part of § 23, and must ignore the relation of § 23 to § 22. We may add that it is hard to see how so severe a reading would tend significantly to reduce the incidence of driving with suspended licenses, which is after all the object of such a statute as § 23.[4]

---

[4] It may be argued that, to the degree evidentiary burdens are cast on the prosecution, defendants will be encouraged to flout the law. But even if this hypothesis is accepted, enforcement of the law is not

Were there doubt about the proper construction of the statute, the defendant would be aided, first, by the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," *Rewis* v. *United States*, 401 U.S. 808, 812 (1971), and, second, by the rule that that interpretation is to be preferred which averts constitutional difficulties.

On the latter point: The punishment for a first violation of § 23 is not inconsequential, and for later violations becomes more severe.[5] Furthermore, three convictions result in revocation of license for a lengthy period of time. See § 22F. In *Commonwealth* v. *Buckley*, 354 Mass. 508 (1968), we considered whether knowledge must be shown to convict a person for being present where narcotics were being kept illegally. In light of the heavy penalty attaching to the crime — imprisonment for up to five years — we thought clear statutory language would be needed (which in the end we did not find) to buttress an interpretation that knowledge was irrelevant; and back of the interpretative question was the constitutional doubt. On the other hand, we said *Commonwealth* v. *Minicost Car Rental, Inc.*, 354 Mass. 746 (1968), that, in view of the minor penalty there exacted and the absence of damage to an offender's reputation upon conviction, knowledge need not be shown to convict for a parking violation. In the present case, it would take clear statutory language (which we do not find) to repel the implication of a requirement of proof of receipt of notice, and especially so when the constitutional difficulty is appreciated.

---

likely to be hurt here because the prosecution is not unduly burdened by our present decision (see point 2 [b] below).

[5] A first offense may be punished by a fine of between fifty and one hundred dollars, or imprisonment for up to ten days, or both. Subsequent offenses are punishable by imprisonment for not less than ten days and for up to one year.

No doubt the State has broad power to create "strict liability" or "public welfare" offenses, to impose criminal sanctions without regard to whether the particular defendant was, or had occasion to be, conscious of wrongdoing. Yet to hold that the Commonwealth is relieved here of even the obligation to prove receipt of notice up to the usual standard of persuasion — which in practice would mean that a defendant was deprived of all opportunity to overcome the presumption of receipt which anyway attaches to proof of mailing — might possibly put § 23, as applied to suspension of domestic licenses, beyond the constitutional pale. The situation would begin to resemble *Lambert* v. *California,* 355 U. S. 225 (1957), where the Supreme Court reversed a conviction under a city ordinance that required convicted felons who would be in the city for more than five days to register with the police department. The Court said that "[w]here a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process." *Id.* at 229-230. See also *United States* v. *Freed,* 401 U.S. 601 (1971); *United States* v. *Weiler,* 458 F.2d 474, 477-480 (3d Cir. 1972). A defendant charged with driving after suspension of license could similarly claim that to bar him from contesting receipt of notice would be to condemn him to grave penalties despite lack of knowledge and lack of probability of his acquiring such knowledge.[6]

---

[6] The degree of strength of the possible constitutional claim under the *Lambert* case depends on the unresolved question whether its "probability of knowledge" standard refers to the probability that an average member of the group on whom a duty is imposed will learn of the duty, cf. *Powell* v. *Texas,* 392 U.S. 514, 535 n.27 (1968) (Marshall, J., announcing judgment of court); *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314-315 (1950), or to the probability that a person in the defendant's position will learn of it. The latter heightened standard is reflected in *United States* v. *Renner,* 496 F.2d 922 (6th Cir. 1974) (but see *United States* v. *Barrett,* 504 F.2d 629 [6th Cir. 1974], cert. granted on other grounds, 420 U.S.

We think, on the other hand, that the interpretation of § 23 adopted in this opinion is not constitutionally offensive even though some defendants may be convicted who were not aware that their licenses were suspended and might not readily have been able to come by that knowledge. They may find themselves in that predicament because "receipt" does not necessarily import knowledge by the recipient of the content of the communication. (See point 2 [b] below.) But the alternative, requiring proof of actual knowledge, would be extremely awkward. And conviction may be justified upon a showing of "receipt" because with greater diligence or circumspection the person might have ensured that received mail came to his attention.[7] See *Commonwealth* v. *Olivo, ante,* 62 (1975); *United States* v. *International Minerals & Chem. Corp.,* 402 U.S. 558, 564-565 (1971); *United States* v. *Freed,* 401 U.S. 601 (1971); cf. *DaLomba* v. *Director of the Div. of Employment Security, ante,* 92 (1975). See also Wasserstrom, Strict Liability in the Criminal Law 12 Stan. L. Rev. 731, 741-743 (1960).

---

923 [1975] [limiting *Renner* to its facts]), and *United States* v. *Mancuso,* 420 F.2d 556 (2d Cir. 1970) (but see *United States* v. *Logan,* 434 F.2d 131, 134-135, 135 n.5 [9th Cir. 1970] [questioning *Mancuso* by arguing in part that circumstances were sufficient to alert defendant]). See also *Eves* v. *Iowa Employment Security Comm'n,* 211 N.W.2d 324 (Iowa 1973); *State* v. *Hammond,* 116 N.J. Super. 244 (Camden County Ct. 1971); *State* v. *Simmons,* 172 N.E.2d 194 (Ohio, Ravenna Mun. Ct. 1960).

[7] Mr. Justice Holmes noted that "[w]hen according to common experience a certain fact generally is accompanied by knowledge of the further elements necessary to complete what it is the final object of the law to prevent, or even short of that, when it is very desirable that people should find out whether the further elements are there, actual knowledge being a matter difficult to prove, the law may stop at the preliminary fact, and in the pursuit of its policy may make the preliminary fact enough to constitute a crime." *Commonwealth* v. *Smith,* 166 Mass. 379, 375-376 (1896); see *Commonwealth* v. *Mixer,* 207 Mass. 141 (1910).

(c) Specific precedents are urged upon us with which we deal briefly. In *Commonwealth* v. *Sabean*, 275 Mass. 546 (1931), this court held that a licensed passenger must be shown to know that the driver was unlicensed before he could be convicted for violations by the driver; the statute did not state that such knowledge must be shown. We do not think the statutory or factual framework of *Sabean* is so close as to supply convincing authority for a requirement of proof of actual knowledge in the present case; but the decision tends to undermine the Commonwealth's contention that protection of the public from incompetent drivers forces a reading of § 23 to absolve the Commonwealth of proof of receipt of notice (or knowledge). The Commonwealth argues from two motor vehicle decisions which interpreted statutes so as to allow conviction without a showing of blame. But our statute indicates that receipt of notice (and to that extent "blame" on the part of the defendant for not complying with the notice) must be proved. Moreover, we note that following these decisions the Legislature amended the statutes so as to require proof of elements of intent or negligence. See *Commonwealth* v. *Coleman*, 252 Mass. 241 (1925) (unauthorized use of motor vehicle; cf. St. 1926, c. 253); *Commonwealth* v. *Pentz*, 247 Mass. 500 (1924) (driving to endanger the public; cf. St. 1928, c. 281, § 1); *Commonwealth* v. *Kraatz*, 2 Mass. App. Ct. 196, 200-201 (1974).

As to the decisions outside Massachusetts, so various are they in their statutory backgrounds and factual situations and in the amount of attention paid to the Constitution that neither side can take great comfort from them; but it is fair to say that there is little authority for the Commonwealth's position, and much that suggests or supports a higher standard of protection for the defendant.[8] We

---

[8] We find no decision sustaining the position taken by the Commonwealth that proof of nonreceipt of suspension is immaterial after the prosecution has shown mailing by ordinary mail. There is authority

say a word about Illinois because the Commonwealth claims that State as an ally.  The Illinois statute does not provide or suggest that receipt of notice is an element to be proved in a prosecution for driving in violation of a suspension order, see Ill. Rev. Stat. c. 95½, § 6-303 (a) (1973); there is, indeed, provision that the notice of suspension required to be sent to the operator by the Secretary of State shall be "deemed to have been served" when properly mailed.  §§ 6-209, 6-211 (c).  The total effect is that mailing is enough.  This is the contrary of our statute which indicates that there must be proof of receipt.  Moreover, the constitutional issue was not presented in the Illinois cases cited by the Commonwealth.  In *People* v. *Espenscheid*, 109 Ill. App. 2d 107 (1969), the defendant did not deny receiving the notice. In *People* v. *Strode*, 13 Ill. App. 3d 697 (1973), the court noted that the defendant knew his license has been revoked and thus "questions of due process do not arise." *Id.* at 698.  Similarly, in *People* v. *Twitty*, 25 Ill. App. 3d 1065 (1975), the defendant was taken to have been aware of the revocation of his license.  So none of

---

that seems to foreclose consideration of knowledge or receipt, but the statutes require that notice of suspension be sent by certified or registered mail, see Conn. Gen. Stat. Ann. tit. 14, c. 246, § 14-111(a) (1970), .State v. *Pueschel*, 30 Conn. Supp. 556 (C.P. App. Div.), cert. denied, 414 U.S. 934 (1973); Vt. Stat. Ann. tit. 23, § 204 (1967), *State* v. *Cattanach*, 129 Vt. 57 (1970), or even require a signed return receipt for notice sent by certified mail, see Vernon's Ann. Civ. St. art. 29c; art. 6687b, § 22(a) (1969), *Simmons* v. *State*, 443 S.W.2d 852 (Tex. Crim. App. 1969); Ore. Rev. Stat. § 482.570 (1974), *State* v. *Buen*, 13 Ore. App. 426 (1973).  For cases appearing to require (a) a showing of actual knowledge, see *In re Murdock*, 68 Cal. 2d 313 (1968); *State* v. *Simmons*, 172 N.E.2d 194 (Ohio, Ravenna Mun. Ct. 1960); cf. *State* v. *Hammond*, 116 N.J. Super. 244 (Camden County Ct. 1971) (actual knowledge of suspension must be shown for conviction of applying for a registration certificate during suspension and for erroneously stating on application that registration was not suspended); or, (b) at least a showing of receipt of notice or refusal to accept it, see *Commonwealth* v. *Moore*, 47 Pa. D. & C. 2d 416 (C.P. of Fulton County 1969); *Commonwealth* v. *Aley*, 88 Pa. D. & C. 280 (C.P. of Montgomery County 1954).

the cases approached *Lambert* v. *California*, 355 U.S. 225 (1957); and on the facts of each the defendant could have been convicted under our statute.

2. *"Receipt" and the rulings of the trial judge.* (a) As the text of § 23 itself suggests by reference to an agent or employer, the defendant need not himself have taken physical hold of the notice in order to be found to have received it within the meaning of the statute. More generally, in *Old Colony R.R.* v. *Assessors of Quincy,* 305 Mass. 509, 513 (1940), the court, considering the timeliness of an application for tax abatement, suggested that receipt does not occur "until [the application] has been brought to the attention of the assessors or at least until the possession and control of the application have been transferred to them." The second component of receipt, transfer of possession and control, must be defined in practical terms and no exhaustive definition will be attempted. Certainly if the operator himself has exercised control over the notice, he has received it. We think, too, that if the notice reaches a member of the operator's household or someone else who customarily acts for him in handling his mail, he should be held to have received it. The registrar cannot control these intermediaries and it is for the operator to manage them. Cf. *Nelson* v. *New York,* 352 U.S. 103, 107-109 (1956) (employer responsible for notice received by his book-keeper). It does not follow, however, that delivery of the notice by the mail carrier to the proper address necessarily means receipt by the operator. If mail is lost after such delivery but before possession or control passes to the operator or others for him, then receipt is put in question, at least if the loss could not have been pre-vented by reasonable precautions.

(b) Proper mailing of a letter is "prima facie evidence" in civil cases of its receipt by the addressee. See, e.g., *Anderson* v. *Billerica,* 309 Mass. 516, 518 (1941); *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman,* 302 Mass. 508, 509-510 (1939); *Huntley* v. *Whittier,* 105

Mass. 391, 392-393 (1870). The inference of receipt of a properly addressed letter has been applied in a criminal case in the Commonwealth, see *Commonwealth* v. *Norton*, 339 Mass. 592, 594 (1959) (citing *Hobart-Farrell* and *Huntley, supra*), and especially in view of the common use of the presumption in criminal cases in other jurisdictions, see, e.g., *Hagner* v. *United States*, 285 U.S. 427, 430-431 (1932); *State* v. *Mays*, 96 Ariz. 366, 367-368 (1964); *Nack* v. *State*, 189 Wis. 633, 636 (1926), we may take it that a "prima facie" rule exists here in criminal as well as in civil cases. See *Commonwealth* v. *Brooks*, 366 Mass. 423, 424-425 n.2 (1974) (criminal case citing *Hobart-Farrell, supra,* as example of operation of prima facie evidence). As we recently said in *Commonwealth* v. *Pauley*, 368 Mass. 286, 291 (1975), appeal dismissed for want of a substantial Federal question, 423 U.S. 887 (1975), the meaning of "prima facie" in the criminal context is that "in the absence of competing evidence, the jury [are] permitted, but not required, to find that the inferred or presumed fact [is] true beyond a reasonable doubt." It is at the point when the opponent has introduced "sufficient evidence, which, cast against the natural inferential value of the basic fact [here the mailing], creates an issue of fact for the trier, that the opponent has satisfied his burden [of production]" and the effect of the presumption disappears. *Id.* at 290; see *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman*, 302 Mass. 508, 509-510 (1939).[9]

Difficult as it may be for a defendant in a prosecution like the present to make headway against the presumption of receipt, we think he is entitled to the chance to introduce relevant evidence tending to show nonreceipt, and of that chance the defendant was deprived here.

---

[9] We have no doubt that the mailing-receipt presumption as described is constitutionally valid, following our reasoning in the *Pauley* case.

(c) Coming to the judge's rulings: there was error in his refusal of the defendant's request to charge that, in order to find the defendant guilty, the jury must find that he received notice of the suspension. Although unelaborated, this was a correct and material instruction and should have been given; the refusal seems to stem from a basic misconception as to the elements of the offense. The error is enough for reversal.

The judge did not take a consistent course about receiving evidence on the part of the defendant relevant to nonreceipt, but there was error in his exclusions over objection. During the hearing on the motion to dismiss, the judge had refused to allow the defendant to testify as to whether he received notice from the registry. He also refused to allow the defendant's father and mother, with whom the defendant and his sister lived in an apartment, to respond to questions dealing with the likelihood of their being aware of a notice that had arrived at the home. At trial one of the police officers testified in response to questioning by the judge that the defendant had made a statement after his arrest that would suggest he knew of his suspension. But the judge refused to permit the defendant's sister to testify that she had not seen a notice informing the defendant that his license was revoked. Although the probative force of the stream of testimony the defendant desired to introduce might have been less than compelling, especially in view of the police testimony, it was relevant to receipt and should have been admitted.

At trial the father was also not permitted to testify to a description of the "establishment": that mail delivered to the house was dropped through a slot in the front door, which was always unlocked, opening to a common hallway shared by two apartments. The drift of this proffered testimony was apparently to show the opportunity for the theft of mail, claimed to be a common occurrence in the neighborhood. We need not go further than to say that in case of retrial admission of such

testimony should be made to turn on a judgment regarding its relation to relevant issues: when possession or control passed to the defendant or his surrogate, and what cautionary steps could have been taken to prevent loss.

We sum up the effect of our decision on future cases like the present. It is part of the Commonwealth's case to prove "receipt" (as here defined). The Commonwealth is assisted by the proposition that proper mailing of a letter is "prima facie evidence" of its receipt, which means that from proof of mailing alone the jury may but are not required to find receipt. The defendant is entitled to introduce relevant evidence of nonreceipt.

*Exceptions sustained.*