Commonwealth vs. Peter L. Parenteau.

Middlesex. February 8, 2011. - June 10, 2011.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, & Duffly, JJ.

*Motor Vehicle,* Operation, License to operate. *Registrar of Motor Vehicles,* Revocation of license to operate. *Constitutional Law,* Confrontation of witnesses, Harmless error. *Evidence,* Business record. *Error, Harmless. Practice, Criminal,* Confrontation of witnesses, Harmless error.

At the trial of a criminal complaint charging the defendant with operation of a motor vehicle after his license had been revoked for operating while under the influence of intoxicating liquor, the judge erred in admitting in evidence a certificate from the registry of motor vehicles (registry) attesting to the fact that a notice of license suspension or revocation had been mailed to the defendant, where, in the absence of testimony from any witness on behalf of the registry, admission of the certificate violated the defendant's constitutional right of confrontation, in that the certificate was created exclusively for trial so the Commonwealth could prove a fact necessary to his conviction, namely, that he had been notified of the revocation of his

license [5-10]; further, the admission of the certificate was not harmless beyond a reasonable doubt, where, absent the certificate, the Commonwealth would not have been able to satisfy its burden of proving every element of the charged crime beyond a reasonable doubt [10-11].

COMPLAINT received and sworn to in the Ayer Division of the District Court Department on June 1, 2009.

The case was tried before *Peter J. Kilmartin, J.*

The Supreme Judicial Court granted an application for direct appellate review.

*Nicholas A. Hurston* for the defendant.

*Kevin J. Curtin,* Assistant District Attorney, for the Commonwealth.

SPINA, J. In the present case, here on direct appellate review, we consider whether a District Court judge erred by admitting in evidence, pursuant to G. L. c. 90, § 22 (*d*),[1] a certificate from the registry of motor vehicles (registry) attesting to the fact that a notice of license suspension or revocation was mailed to the defendant, Peter L. Parenteau, on May 2, 2007.[2] The Commonwealth did not present any testimony from a witness on behalf of the registry. For the reasons that follow, we conclude that the admission of the certificate violated the defendant's rights of confrontation and cross-examination under the Sixth Amendment to the United States Constitution, and that such admission was not harmless beyond a reasonable doubt. Accordingly, we reverse the defendant's conviction of operating a

---

[1] General Laws c. 90, § 22 (*d*), states: "Notice to any person whose license or registration certificate or right to operate is suspended or revoked under this section or notice to any person of intention to revoke or suspend his license or registration certificate under this section shall be in writing, shall be mailed by the registrar [of motor vehicles (registrar)] or any person authorized by him to the last address as appearing on the registrar's records or to his last and usual place of abode and a certificate of the registrar that such notice has been mailed in accordance with this section shall be deemed prima facie evidence and shall be admissible in any court of the commonwealth as to the facts contained therein."

[2] The record variously reflects that the defendant's license was either suspended or revoked. Given that the May 2, 2007, notice stated that his driver's license was being revoked, that is the terminology we shall use. Whether his license, in fact, was suspended or revoked is immaterial for purposes of our analysis.

motor vehicle after his license had been revoked for operating while under the influence of intoxicating liquor and remand the case for further proceedings.

1. *Background.* On April 19, 2007, the defendant pleaded guilty in the Palmer Division of the District Court Department to operating a motor vehicle while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24 (1) (*a*) (1). According to the defendant, a judge informed him that his driver's license would be suspended for two years, but, as later discussed, the registrar of motor vehicles (registrar) actually revoked his license for ten years.[3] Around the time of his guilty plea, the defendant was temporarily living at his parents' home on Celebration Circle in Chicopee, and he received his mail at that address.[4] Approximately two years later, when the defendant was no longer living at his parents' home, he received his driver's license in the mail.[5]

On May 30, 2009, at around 9 P.M., the defendant was driving home from a job site in Boxborough when he briefly stopped at a Gulf gasoline station on Massachusetts Avenue to ask for directions. Officer Nathan Bowolick, who was on patrol in the area, observed a motor vehicle parked in the fire lane of the Gulf station. He pulled into the parking lot, checked the registration plate number of the vehicle, and learned that the driver's license of the vehicle's registered owner, the defendant, had been revoked. Officer Bowolick then saw the defendant get into the driver's side of the vehicle, and leave the parking lot. He followed the defendant in his cruiser, activated his blue lights,

---

[3] A conviction of operating a motor vehicle while under the influence of intoxicating liquor results in the revocation of the license or right to operate of the person so convicted, except in limited circumstances not relevant here. See G. L. c. 90, § 24 (1) (*b*). "Such revoked license shall immediately be surrendered to the prosecuting officer who shall forward the same to the registrar." *Id.* Typically, a license suspension or revocation for ten years results from a fourth offense. See G. L. c. 90, § 24 (1) (*c*) (3½). Here, the defendant has not challenged the duration of his license revocation, only the lack of notice.

[4] The record is unclear as to the exact dates when the defendant was living at his parents' home.

[5] In his testimony, the defendant was not asked to which address his driver's license had been mailed, and it is not clear from the record whether the license was mailed to him from the Palmer Division of the District Court Department or the registry of motor vehicles (registry).

and pulled over the defendant's vehicle on Massachusetts Avenue. The defendant informed Officer Bowolick that his address was 12 Cedar Hill Road in Holyoke, and he provided Bowolick with what appeared to be a valid driver's license. The defendant subsequently was placed under arrest for violating G. L. c. 90, § 23,[6] by operating a motor vehicle after his license had been revoked pursuant to G. L. c. 90, § 24 (1) (*a*) (1), for operating under the influence of intoxicating liquor. The case proceeded to a jury trial on October 27, 2009.

The defendant filed a motion in limine to exclude documentary evidence from the registry and the Palmer District Court (in the event that such evidence was not supported by witness testimony at trial) on the ground that admission of the documentary evidence violated the defendant's right to confrontation under the Sixth Amendment. The motion was denied. At trial, the Commonwealth introduced a certificate from the registry, dated July 24, 2009, on which appeared a stamped attestation of the registrar stating, in relevant part: "I hereby certify that the annexed instrument(s) are true copy(s) of the driving history and notice(s) of suspension(s)/revocation(s) that were mailed on the date(s) appearing on the notice to the last address on file as appearing in the registrar's records in accordance with the provisions of [G. L. c. 90, § 22]." The attached notice of license revocation was dated May 2, 2007, and the address to which it purportedly was mailed was the home of the defendant's parents on Celebration Circle in Chicopee. The notice stated that the defendant's license was being revoked for ten years pursuant to his 2007 guilty plea on a charge of operating a motor vehicle while under the influence of intoxicating liquor. The Commonwealth also introduced criminal docket sheets from the Palmer District Court relating to the defendant's guilty plea.[7]

At the close of the Commonwealth's evidence, the defendant

---

[6]General Laws c. 90, § 23, provides, in relevant part: "Any person convicted of operating a motor vehicle after his license to operate has been suspended or revoked, or after notice of the suspension or revocation of his right to operate a motor vehicle without a license has been issued by the registrar and received by such person or by his agent or employer, and prior to the restoration of such license or right to operate or to the issuance to him of a new license to operate . . . shall . . . be punished . . . ."

[7]In this appeal, the defendant has not challenged the admissibility of the

moved for a required finding of not guilty. The motion was denied. The defendant then testified that he was never notified that his license had been revoked for ten years. It was his understanding that, pursuant to his earlier guilty plea, his license had been revoked for two years. The defendant further testified that his father always telephoned him when the defendant received mail at his parents' home in Chicopee, but that he did not hear from his parents about receiving any mail from the registry. At the close of all evidence, the defendant renewed his motion for a required finding of not guilty. The motion was denied.

The jury found the defendant guilty of operating a motor vehicle after his license had been revoked for operating while under the influence of intoxicating liquor. After the guilty verdict was returned, the defendant again moved for a required finding of not guilty, or, in the alternative, for a new trial. The motions were denied. The defendant was sentenced to one year in a house of correction, sixty days to be served and the balance suspended for two years with probation.

2. *Admission of registry certificate.* The thrust of the defendant's argument is that the admission in evidence of the registry certificate, in the absence of testimony from a registry witness, violated his right to confrontation under the Sixth Amendment. The defendant contends that the certificate was created exclusively for trial so the Commonwealth could prove a fact necessary to convict him, namely, that he had been notified of the ten-year revocation of his driver's license. Because he challenged such notice, the defendant continues, any attested document that served as evidence to the contrary was a testimonial statement that was subject to cross-examination. We agree.

The Commonwealth bears the burden of proving every element of a crime beyond a reasonable doubt. See *Commonwealth v. Farley*, 443 Mass. 740, 745, cert. denied, 546 U.S. 1035 (2005). A charge of operation of a motor vehicle with a suspended or revoked license requires the Commonwealth to prove, among other things, that the defendant was notified that his license had been suspended or revoked. See G. L. c. 90, § 23; *Com-*

criminal docket sheets from the Palmer District Court. See *Commonwealth v. Weeks*, 77 Mass. App. Ct. 1, 5-7 (2010). Therefore, we need not consider this particular matter further.

monwealth v. *Deramo*, 436 Mass. 40, 50 (2002); *Commonwealth*
v. *Crosscup*, 369 Mass. 228, 231-233 (1975). See also Model
Jury Instructions for Use in the District Court § 5.200 (2009).
Pursuant to G. L. c. 90, § 22 (*d*), the Commonwealth can satisfy
this burden by showing that the registry properly mailed the
notice of suspension or revocation, which constitutes "prima
facie evidence of receipt by the addressee." *Commonwealth* v.
*Koney*, 421 Mass. 295, 303-304 (1995). See *Commonwealth* v.
*Crosscup*, *supra* at 239-240, 242.[8] "[T]he defendant need not
himself have taken physical hold of the notice in order to be
found to have received it within the meaning of [G. L. c. 90,
§ 23]." *Id.* at 239. Here, the Commonwealth presented at trial
the registry certificate to prove that the defendant was notified
of his license revocation.

The Sixth Amendment, applicable to the States through the
Fourteenth Amendment to the United States Constitution, see
*Pointer* v. *Texas*, 380 U.S. 400, 403 (1965), guarantees that
"[i]n all criminal prosecutions, the accused shall enjoy the right
. . . to be confronted with the witnesses against him . . . ." In
*Crawford* v. *Washington*, 541 U.S. 36, 59 (2004) (*Crawford*),
the United States Supreme Court held that the out-of-court
"[t]estimonial" statements of a witness are inadmissible at trial
except where the witness is unavailable and the defendant had a
prior opportunity for cross-examination. The Court stated that
the confrontation clause applies to "witnesses" against the ac-
cused, "in other words, those who 'bear testimony.' " *Id.* at 51,
quoting 2 N. Webster, An American Dictionary of the English
Language (1828). " 'Testimony,' in turn, is typically '[a] solemn
declaration or affirmation made for the purpose of establishing
or proving some fact.' " *Crawford* v. *Washington*, *supra*, quot-
ing Webster, *supra*. Although the Supreme Court declined to

___

[8]In *Commonwealth* v. *Crosscup*, 369 Mass. 228, 240 (1975), quoting *Com-
monwealth* v. *Pauley*, 368 Mass. 286, 291-292, appeal dismissed, 423 U.S.
887 (1975), this court stated that "the meaning of 'prima facie' in the criminal
context is that 'in the absence of competing evidence, the jury [are] permitted,
but not required, to find that the inferred or presumed fact [is] true beyond a
reasonable doubt.' " Thus, from proof of proper mailing alone, the jury may,
but are not required to, find that a defendant received notice of a license
suspension or revocation, and the defendant is entitled to introduce relevant
evidence tending to show nonreceipt. See *Commonwealth* v. *Crosscup*, *supra*
at 242.

articulate a "comprehensive definition" of "testimonial" state-ments, *Crawford, supra* at 68, it did describe various formula-tions of the "core class" of such statements:

> "[(1)] ex parte in-court testimony or its functional equiva-lent — that is, material such as affidavits, custodial exam-inations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[; (2)] 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions'[; or (3)] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Id.* at 51-52, quoting *White* v. *Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., concurring in part and concurring in judgment). See *Commonwealth* v. *Simon*, 456 Mass. 280, 297, cert. denied, 131 S. Ct. 181 (2010) (statement is testimonial per se if made in formal or solemnized form, such as affidavit, or if made in response to law enforcement interrogation); *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 13 (2005), cert. denied, 548 U.S. 926 (2006).

More recently, in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2531-2532 (2009) (*Melendez-Diaz*), the Supreme Court held that certificates of forensic analysis stating that material seized by the police was cocaine were "affidavits" that fell within the core class of testimonial statements covered by the confrontation clause. Therefore, the admission of such certifi-cates in the absence of testimony from the analysts, or in the absence of a showing that the analysts were unable to testify at trial and that the defendant had been afforded a prior opportu-nity to cross-examine them, violated the defendant's Sixth Amendment right to confrontation. *Id.* at 2532. The Court stated that although the documents at issue were denominated "certifi-cates" under Massachusetts law, see G. L. c. 111, § 13, they were "quite plainly affidavits" in that they were "incontrovert-ibly a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Melendez-Diaz, supra,*

quoting *Crawford, supra* at 51. The fact in question was whether the material seized by the police was, as the prosecutor claimed, cocaine. See *Melendez-Diaz, supra*. The Court further stated, *id.* at 2532, that "not only were the affidavits 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' *Crawford, supra* at 52, . . . under Massachusetts law the *sole purpose* of the affidavits was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance [G. L. c. 111, § 13]" (emphasis in original). See *United States* v. *Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010) (under *Melendez-Diaz*, certificate of nonexistence of record, which indicated that defendant had not received consent to reenter country, was testimonial; its admission at trial in absence of testimony from records analyst who prepared certificate violated defendant's Sixth Amendment rights). See also *Commonwealth* v. *Avila*, 454 Mass. 744, 763 & n.20 (2009) (factual findings of unavailable medical examiner contained in autopsy report made for purposes of investigating and prosecuting crime were testimonial, and their admission at trial violated confrontation clause).

We conclude that the registry certificate, like a certificate of drug analysis, is testimonial in nature. It is a solemn declaration made by the registrar for the purpose of establishing the fact that a notice of license revocation was mailed to the defendant on May 2, 2007, and, by inference, was received by him. The registry certificate was dated July 24, 2009, nearly two months after the criminal complaint for operating a motor vehicle after license revocation had issued against the defendant. As such, it plainly was made for use at the defendant's trial as prima facie evidence that he was notified of his license revocation, an essential element of the charged crime that the Commonwealth was required to prove. The certificate did not simply attest to the existence and authenticity of records kept by the registry but made a factual representation based on those records that a particular action had been performed — i.e., notice had been mailed on a specified date. See, e.g., *State* v. *Jasper*, 158 Wash. App. 518, 531-532 (2010) (affidavit from legal custodian of driving records attesting that records showed that defendant's

driver's license was suspended on particular day was testimonial for confrontation clause purposes). The mere existence of a copy of the notice of license revocation in the registrar's files did not, in and of itself, constitute proof that it was mailed to the defendant. Because the certificate is a testimonial statement, its admission at trial in the absence of testimony from a registry witness violated the defendant's Sixth Amendment right to confrontation. Contrast *State* v. *Murphy*, 991 A.2d 35, 41-44 (Me.), cert. denied, 131 S. Ct. 515 (2010).

The Commonwealth's argument that the registry certificate should be classified as a business record is unavailing. Ordinarily, documents kept in the regular course of business may be admitted at trial notwithstanding their hearsay status. See G. L. c. 233, § 78; *Commonwealth* v. *Trapp*, 396 Mass. 202, 208 (1985), *S.C.*, 423 Mass. 356, cert. denied, 519 U.S. 1045 (1996). See also Mass. G. Evid. § 803 (6) (A) (2011). In *Crawford, supra* at 56, the Supreme Court noted that, by their nature, certain out-of-court statements, such as business records, are not testimonial. However, the Court pointed out in *Melendez-Diaz, supra* at 2538, that business records are *not* admissible at trial "if the regularly conducted business activity is the production of evidence for use at trial." See *Palmer* v. *Hoffman*, 318 U.S. 109, 114 (1943) (holding that accident report provided by railroad company employee did not qualify as business record where essentially prepared for use "in litigating, not in railroading"). It followed, therefore, that a clerk "was permitted 'to certify to the correctness of a copy of a record kept in his office,' but had 'no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect.' " *Melendez-Diaz, supra* at 2539, quoting *State* v. *Wilson*, 141 La. 404, 409 (1917). The Court in *Melendez-Diaz* further explained that "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial." *Melendez-Diaz, supra* at 2539-2540. See *Commonwealth* v. *Weeks*, 77 Mass. App. Ct. 1, 5-7 (2010) (holding that admission in evidence

of certified copies of docket sheets of defendant's prior convictions did not violate defendant's Sixth Amendment right to confrontation because such records are not testimonial). Thus, when determining the admissibility of a particular business record, a court must examine carefully the purpose for which it was created. See *id.* at 5.

We agree with the Commonwealth that the actual notice of the defendant's license revocation, dated May 2, 2007, constitutes a business record of the registry, created and kept in the ordinary course of its affairs.[9] However, there is no evidence of the existence of a contemporaneous business record showing that the notice was mailed on that date. If such a record had been created at the time the notice was mailed and preserved by the registry as part of the administration of its regular business affairs, then it would have been admissible at trial. That would have been the correct procedure for the admission of a business record from the registry. Here, however, the only evidence that the notice was mailed to the defendant is the registry certificate dated July 24, 2009, three months before trial, attesting to that fact. Such certificate was not created as part of the administration of the registry's regular business affairs, but for the purpose of establishing an essential fact at trial. Accordingly, the registry certificate did not constitute a nontestimonial business record.[10]

3. *Harmlessness of error.* Where, as here, an objection has

---

[9]We assume without deciding that the defendant's "driving history" is a record kept in the ordinary course of registry business.

[10]Our conclusion does not contradict recent decisions issued by the Appeals Court. In *Commonwealth* v. *McMullin*, 76 Mass. App. Ct. 904, 904 (2010), the Appeals Court concluded that the admission of certified copies of "records" from the registry did not violate the defendant's Sixth Amendment right of confrontation. The opinion does not specify the particular "records" at issue in that case. We caution that it is critical that a court examine each individual "record" at issue to determine whether it is testimonial and therefore subject to confrontation. In *Commonwealth* v. *Martinez-Guzman*, 76 Mass. App. Ct. 167, 171 n.3 (2010), the court noted that the defendant had claimed for the first time in a letter submitted after oral argument that, in light of *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), the admission of attested records from the registry violated his right to confrontation under the Sixth Amendment. The Appeals Court stated that the defendant had waived this claim by failing to present it in his appellate brief. See *Commonwealth* v. *Martinez-Guzman, supra.* Any further elaboration on this issue was merely dicta unnecessary to the holding of the case.

been properly preserved, "we evaluate the admission of constitutionally proscribed evidence to determine whether it was harmless beyond a reasonable doubt." *Commonwealth* v. *Nardi*, 452 Mass. 379, 394 (2008). In making such a determination, "we analyze the case to see whether the error might have had an effect on the jury or contributed to the verdict[], and whether the Commonwealth's evidence was ' "merely cumulative" of evidence properly before the jury,' . . . or was overwhelming without the erroneously admitted evidence." *Commonwealth* v. *Dagraca*, 447 Mass. 546, 553 (2006), quoting *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 n.8 (1987). The burden is on the Commonwealth to show that the wrongfully admitted evidence did not contribute to the verdict. See *Commonwealth* v. *Charros*, 443 Mass. 752, 765, cert. denied, 546 U.S. 870 (2005). Any ambiguities or doubts are to be resolved in favor of the defendant. See *Commonwealth* v. *Vardinski*, 438 Mass. 444, 452-453 (2003).

We conclude that the admission of the registry certificate was not harmless beyond a reasonable doubt. Before, during, and after trial, the defendant challenged receipt of notice from the registry that his driver's license had been revoked for ten years. The certificate, admitted in violation of his Sixth Amendment right to confrontation, was the only evidence presented by the Commonwealth to establish that notice was mailed to the defendant on May 2, 2007. Absent the certificate, the Commonwealth would not have been able to satisfy its burden of proving every element of the charged crime beyond a reasonable doubt.

4. *Conclusion.* For the reasons discussed, the judgment of conviction is reversed, the verdict is set aside, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*