## COMMONWEALTH *vs.* RAZAK O. OYEWOLE.

No. 12-P-906.

Middlesex. September 18, 2013. - January 7, 2014.

Present: COHEN, KATZMANN, & AGNES, JJ.

Further appellate review granted, 467 Mass. 1108 (2014).

*Motor Vehicle,* Operation, License to operate, Operating under the influence. *License. Notice.*

At the trial of a criminal complaint charging the defendant with operating a motor vehicle while his driver's license was suspended for operating while under the influence of liquor, the judge did not err in denying the defendant's motion for a required finding of not guilty, where the Commonwealth established that the defendant's license had been suspended and that the suspension remained in effect on the date in question; where there was no merit to the defendant's argument that the Commonwealth was required to further prove that the defendant had not been granted a hardship license; and where the Commonwealth, although not required to prove that the defendant had actual knowledge of the suspension, nevertheless offered sufficient proof on that issue. [672-676] AGNES, J., dissenting.

COMPLAINT received and sworn to in the Woburn Division of the District Court Department on November 27, 2009.

The case was heard by *James D. Barretto,* J.

*Stacy J. Silveira* for the defendant.

*KerryAnne Kilcoyne,* Assistant District Attorney, for the Commonwealth.

COHEN, J. After a jury-waived trial in the District Court, the defendant was convicted of operating a motor vehicle while his driver's license was suspended for operating while under the influence of liquor (OUI). See G. L. c. 90, § 23, third par. On appeal he claims that his motion for a required finding of not guilty should have been allowed because the Commonwealth was required and failed to prove (1) that he had not been granted a hardship license, and (2) that he was on notice that his license was suspended. We affirm.

*Background.* At the defendant's brief trial, the Commonwealth called two witnesses and introduced two documents; the defendant did not testify and presented no evidence. Officer Michael Patterson of the Wilmington police department testified that he was on patrol at approximately 12:30 A.M. on November 26, 2009, when he saw a motor vehicle traveling in the opposite direction without illuminated headlights. Officer Patterson activated his emergency lights, made a U-turn, and "conducted a motor vehicle stop." When the vehicle stopped, Officer Patterson approached the driver (later identified as the defendant) and asked him for his driver's license and registration. The defendant, who was the only occupant of the vehicle, provided the officer with what he described in testimony as "a license," and with a registration showing that the vehicle was a rental vehicle. On cross-examination, Officer Patterson testified that he confiscated the license shown to him by the defendant; however, the license was not produced at trial, and no further information about it was developed. When the stop was completed, Officer Patterson placed the defendant under arrest for driving with a suspended license.[1]

Sergeant Christopher Ahern of the Wilmington police department testified that he was the shift supervisor on the night in question, and that he arrived at the scene while the motor vehicle stop was in progress. Sergeant Ahern, who booked the defendant at the police station, recited the information that had been provided by the defendant: his name, address, date of birth, driver's license number, and Social Security number. On cross-examination Ahern testified that the defendant also stated that he was employed as a "caregiver."

At the conclusion of the officers' testimony, the Commonwealth introduced two exhibits before resting its case. The first exhibit (exhibit 1) was a two-page document obtained from the Registry of Motor Vehicles (RMV) and bearing the attestation that the information contained therein was a true representation of information contained in RMV records. The document, which

---

[1]Prior to trial, the judge agreed with the defendant that there should be no reference to any "license check," on the theory that such evidence would be inadmissible hearsay. The prosecutor adhered to this ruling in examining the witnesses.

depicted the defendant's most recent and previous license photographic images, and listed the defendant's name, address, date of birth, Social Security number, and driver's license number, was offered by the prosecutor solely to corroborate the defendant's biographical information. The judge allowed it in evidence for that purpose.[2]

The second exhibit (exhibit 2) was a certified copy of the criminal docket in a District Court case arising from a complaint, dated August 4, 2009, charging the defendant with OUI, negligent operation of a motor vehicle, and a marked lanes violation.[3] The second page of exhibit 2, entitled "Offenses," identified the "Disposition Date" for all three charges as "10-21-09." With respect to the OUI charge, the box entitled "Disposition Method" showed a check mark next to the printed words: "Admission to Sufficient Facts accepted after colloquy and 278, § 29D warning." The box entitled "Sentence or Disposition" showed a check mark next to the printed words: "Sufficient facts found but continued without a finding until," next to which was the handwritten date of "10-21-2010." Also contained in the "Sentence or Disposition" box were the following handwritten notations: "ASAP 24-D," "60 day license loss," "24Q Evaluation," and "Alien warning."

The Commonwealth's position at trial was that exhibit 2 sufficed to establish (1) that the defendant's license was suspended when he was operating his vehicle on November 26, 2009, because that date was within the sixty-day suspension period ordered as part of the October 21, 2009, disposition of his OUI charge, and (2) the defendant was on notice that his license was suspended as a component of his sentence. In arguing for a required finding of not guilty, the defendant contended that the

---

[2]The defendant contended below that the admission of exhibit 1 violated his confrontation rights under the Sixth Amendment to the United States Constitution; however, the judge ruled that unlike the RMV certificate at issue in *Commonwealth* v. *Parenteau*, 460 Mass. 1, 8-10 & n.9 (2011), the document here was admissible as a nontestimonial business record for the purpose for which it was offered.

[3]In accordance with *Commonwealth* v. *Parenteau, supra* at 9-10, and *Commonwealth* v. *Weeks*, 77 Mass. App. Ct. 1, 5-7 (2010), the judge ruled that the admission in evidence of exhibit 2, a public record created for the administration of court affairs, did not violate the defendant's confrontation rights.

Commonwealth was obliged to prove that he had not obtained a hardship license pursuant to G. L. c. 90, § 24D, and that exhibit 2 did not establish that he was on notice that his license was immediately suspended for sixty days as of the date of the October 21, 2009, disposition.

*Discussion.* In reviewing the denial of a motion for a required finding of not guilty, we examine the evidence presented by the Commonwealth and consider whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979). We view the evidence, and all permissible inferences drawn from the evidence, in the light most favorable to the Commonwealth. *Id.* at 676-677.

It is well established that "[t]o prove the crime of operating a motor vehicle after revocation or suspension of license for operating while under the influence of alcohol, G. L. c. 90, § 23, [third[4]] par., the Commonwealth must prove the following: (1) that the defendant operated a motor vehicle; (2) that at the time of that operation the defendant's license was revoked or suspended; (3) that the license suspension or revocation was pursuant to a violation of one of the specified statutory sections (including [OUI] in violation of G. L. c. 90, § 24[1][*a*]); and (4) that the defendant was notified that his license had been suspended or revoked." *Commonwealth* v. *Deramo*, 436 Mass. 40, 50 (2002).

The defendant posits that this statement of the law is incomplete because, in his view, the Commonwealth also is required to negate the possibility that the suspended operator's license has been restored. He reaches this conclusion on the basis of the language of § 23, which reads in relevant part: "Any person convicted of operating a motor vehicle after his license to operate has been suspended or revoked . . . *and prior to the restoration of such license* . . . shall be punished . . ." (emphasis supplied). G. L. c. 90, § 23, as appearing in St. 1986, c. 620, § 3. However, this language simply states the obvious: to be guilty of operating with a suspended license, the defendant must

---

[4]Since the decision in *Commonwealth* v. *Deramo*, 436 Mass. 40, 50 (2002), § 23 was amended to include a new second paragraph. St. 2009, c. 27, § 67.

be shown to have operated a motor vehicle during the period when the suspension was in effect.

Here, exhibit 2 established that the defendant's license was suspended at the time of the alleged offense. See *Commonwealth* v. *Beaulieu*, 79 Mass. App. Ct. 100, 103 (2011) (certified copy of OUI conviction admissible to prove that defendant's license was suspended at time of subsequent arrest for operating with license suspended for OUI). "[D]ocket sheets are part of the court records and may be presented as prima facie evidence of the facts recorded therein." *Northeast Line Constr. Corp.* v. *J.E. Guertin Co.*, 80 Mass. App. Ct. 646, 651 (2011), quoting from *Commonwealth* v. *Podoprigora*, 46 Mass. App. Ct. 928, 929 (1999), and cases cited. Among the facts established by the docket sheets are that the defendant was present in court on October 21, 2009, when, after a colloquy, he admitted to sufficient facts to warrant a guilty finding on the charge of OUI; and that he received a sentence comprised of a sixty-day suspension of his driver's license, a referral for an assessment of the level of his addiction to alcohol in accordance with G. L. c. 90, § 24Q, and an assignment to "ASAP,"[5] an education and treatment program, in accordance with G. L. c. 90, § 24D.

In addition, the judge reasonably could infer from the docket sheets, when considered together with the provisions of § 24D, that the defendant's sixty-day suspension commenced on October 21, 2009. Section 24D provides that certain categories of persons convicted of or charged with OUI may, with their consent, be placed on probation for not more than two years and, as a condition of probation, be assigned to a driver alcohol education program, and have their driver's licenses suspended for no less than forty-five days and no more than ninety days. Section 24D, as appearing in St. 2003, c. 28, § 13, further provides that "*[u]pon each disposition* under this section, the defendant will surrender any Massachusetts drivers license or permit in his possession to the probation department of that court. The probation department will dispose of the license, and the court shall

[5]The acronym ASAP stands for Alcohol Safety Action Program, a program "designed to decrease the incidence of drunk driving." *Massachusetts Auto. Rating & Acc. Prevention Bureau* v. *Commissioner of Ins.*, 389 Mass. 824, 843 (1983).

report the disposition in the case in a manner as determined by the registrar." In short, the termination of the defendant's driving privilege is, in the ordinary course, effectuated "[u]pon disposition."

In the present case, the judge reasonably could find that the defendant's sixty-day suspension began immediately upon the disposition of his OUI case. There is nothing on the docket sheets to suggest that the commencement of the suspension was delayed; and even though there was evidence that the defendant produced "a license" of some sort when stopped by Officer Patterson, there was no evidence as to its character or authenticity, or how it came to be (or remain) in the defendant's possession. On the state of the evidence, the judge reasonably could find that the suspension went into effect as of October 21, 2009.

The judge also reasonably could find that the sixty-day suspension remained in effect thirty-six days later, on November 26, 2009. Even if the defendant might have been eligible to obtain a hardship license while participating in the § 24D program,[6] it was not the Commonwealth's burden to negate that possibility. The unembellished evidence of the defendant's possession of "a license" did not conclusively establish that his privilege to drive had been restored, even if considered with the evidence elicited by the defendant on cross-examination that, at booking, the defendant gave his occupation as a caregiver. Viewing the evidence in the light most favorable to the Commonwealth, the judge was free to find, based upon the prima facie evidence contained in exhibit 2, that the defendant's license was suspended for sixty days from and after October 21, 2009. See *Commonwealth* v. *Beaulieu*, 79 Mass. App. Ct. at 103.

Finally, the judge was entitled to find that the defendant was on notice of the suspension. The judge reasonably could infer from exhibit 2 that the defendant, whose presence in court on October 21, 2009, is undeniable, was placed on notice that, as a

---

[6]Section 24D provides, in relevant part, that "a defendant may immediately upon entering a program pursuant to this section apply to the registrar for consideration of a limited license for hardship purposes. The registrar, at his discretion, may issue such license under such terms and conditions as he may prescribe. Any such license shall be valid for an identical 12 hour period, 7 days a week." G. L. c. 90, § 24D, as appearing in St. 2003, c. 28, § 13.

consequence of his admission to sufficient facts, he was under court order prohibiting his operation of a motor vehicle for the ensuing sixty days.[7] Notice, like other facts, may be ascertained from circumstantial evidence. Furthermore, "[t]o be permissible, an inference need only be reasonable and possible, not necessary or inescapable. Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense." *Commonwealth* v. *Fitzpatrick*, 463 Mass. 581, 590-591 (2012) (quotations and citations omitted). Where the defendant was present in court, tendered a plea, and received a disposition of his OUI charge consistent with G. L. c. 90, § 24D, the judge was well entitled to draw the reasonable, commonsense inference that the defendant was put on notice of the terms under which his case was resolved.

Even if we were to assume, arguendo, that the bare evidence that the defendant possessed "a license" permitted a contrary inference that the defendant left the court house on October 21, 2009, not knowing that his license was suspended, the Commonwealth's proof was sufficient. The Commonwealth was required to prove notice, not that the defendant had actual knowledge of the suspension. See *Commonwealth* v. *Crosscup*, 369 Mass. 228, 236 (1975). Furthermore, to the extent that conflicting inferences arose from the evidence, it was for the judge to determine "where the truth lies, for the weight and credibility of the evidence is wholly within [the fact finder's] province." *Commonwealth* v. *Fitzpatrick, supra* at 591 (quotations and citations omitted).

The defendant was, of course, entitled to introduce relevant evidence tending to show nonreceipt of notice. *Commonwealth* v. *Crosscup, supra* at 240. However, the Commonwealth was

---

[7]There is no merit to the defendant's suggestion that, in deciding the notice issue, the judge erroneously may have relied upon the RMV documents introduced as exhibit 1. As acknowledged in the defendant's brief, that exhibit "did not even include any mention of notice to the defendant." Furthermore, it was offered and admitted only for the nontestimonial purpose of corroborating the defendant's biographical information. There being no contrary indication, we presume that the judge considered that exhibit only for the limited purpose for which he admitted it. See *Commonwealth* v. *Batista*, 53 Mass. App. Ct. 642, 648 (2002).

not required to "exclude every reasonable hypothesis of innocence to prove its case" if, as here, "the record viewed in its entirety supports a conclusion of guilt beyond a reasonable doubt." *Commonwealth* v. *Platt*, 440 Mass. 396, 401 (2003) (quotations and citations omitted).

*Judgment affirmed.*

AGNES, J. (dissenting). I agree with the majority that the judge was warranted in finding that the Commonwealth proved at trial beyond a reasonable doubt three of the four required elements of the charged offense, namely, that the defendant operated a motor vehicle on a public way after his license to operate had been suspended or revoked due to having previously admitted to sufficient facts for a finding of guilty of operating a motor vehicle while under the influence of liquor (OUI). See G. L. c. 90, § 23, third par. However, I do not agree that the Commonwealth presented sufficient evidence of the fourth required element of the offense, namely, that prior to his offense, the defendant was notified that his license had been suspended or revoked.[1] See *Commonwealth* v. *Deramo*, 436 Mass. 40, 50 (2002). See generally *Commonwealth* v. *Lee*, 466 Mass. 1028 (2013). The only evidence bearing on the fourth element is the second exhibit admitted at trial (exhibit 2), a docket entry made on October 21, 2009, when the defendant admitted to sufficient facts in the earlier OUI case. This docket entry simply states that the sentence included a sixty-day loss of license. The record is silent as to whether the defendant received notice that his license was suspended and that the suspension was effective immediately. See *Commonwealth* v. *Crosscup*, 369 Mass. 228, 231, 236 (1975).[2] In my opinion, this evidence is not sufficient to permit a judge to find beyond a reasonable doubt that the

---

[1] Although I do not agree with the reasoning of the judge below, I acknowledge that he gave painstaking consideration to his decision. He correctly identified the legal issues, was admirably patient in listening to the arguments by the prosecutor and defense counsel, and carefully deliberated before making a decision.

[2] In *Crosscup*, *supra* at 229, the license suspension that was the predicate for the criminal charge of operating after suspension in violation of G. L.

defendant was notified that his license had been suspended prior to the date of his arrest, as required by G. L. c. 90, § 23. My specific reasons are outlined *infra*.

a. *Inference of notice.* There is a fundamental and constitutionally significant distinction between the possibility or probability that an event occurred (e.g., notice to the defendant of a license suspension), and proof beyond a reasonable doubt that it occurred. It commonly is said that "proof may be made by inference, and inferences drawn from the evidence 'need only be reasonable and possible and need not be necessary or inescapable.' " *Newman* v. *Commonwealth*, 437 Mass. 599, 602 (2002), quoting from *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). Indeed, this is the linchpin of the majority's reasoning. See *ante* at 675. But when the only evidence to support an element of the crime is an inference, it is not sufficient that the relationship between the basic fact and the inferred fact is simply rational or permissive. Instead, the relationship between the two must be such that a judge as the fact finder is warranted in finding that the inferred fact is true beyond a reasonable doubt. See *County Ct. of Ulster County* v. *Allen*, 442 U.S. 140, 166-167 (1979) (*Ulster County Ct.*).[3] See also *Cosby* v. *Jones*, 682 F.2d 1373, 1376 (11th Cir. 1982); *Miller* v. *Norvell*, 775 F.2d 1572,

---

c. 90, § 23, was mailed to the defendant's home address by the Registrar of Motor Vehicles (registrar), pursuant to G. L. c. 90, § 22(*b*) and (*d*). It was significant that the registrar had a statutory duty to send a notice to the defendant because it provided a basis to invoke the evidentiary rule that a mailing sent through the United States Postal Service warrants an inference that the notice was received. *Crosscup, supra* at 239-240. See *Huntley* v. *Whittier*, 105 Mass. 391, 392 (1870). However, when a defendant pleads guilty or admits to sufficient facts, neither the judge nor the clerk-magistrate is under a duty to inform the defendant of each and every element of the sentence such as when a license suspension takes effect. In a disposition under G. L. c. 90, § 24D, the probation officer is charged with the duty of taking possession of the defendant's license. However, as noted by the majority, *ante* at 670, and as discussed *infra*, the defendant had his driver's license with him when he was arrested on November 26, 2009.

[3] In *Crosscup, supra* at 239-240, which was decided prior to *Ulster County Ct., supra*; *Sandstrom* v. *Montana*, 442 U.S. 510 (1979); *Jackson* v. *Virginia*, 443 U.S. 307 (1979); and *Francis* v. *Franklin*, 471 U.S. 307 (1985), the court stated that the inference that a defendant was on notice that his license had been suspended based on evidence that the notice had been mailed to the defendant's correct address was sufficient, by itself and in the absence of evidence to the contrary, to prove the element of notice beyond a reasonable

1575 (11th Cir. 1985), cert. denied, 476 U.S. 1126 (1986); *People* v. *Housby*, 84 Ill. 2d 415, 421 (1981); *State* v. *Rainey*, 298 Or. 459, 466 (1985); *Morton* v. *Commonwealth*, 13 Va. App. 6, 10 (1991). See also *Commonwealth* v. *Klein*, 400 Mass. 309, 318-319 (1987) (O'Connor, J., dissenting), appeal dismissed, 495 U.S. 916 (1990).

In *Housby, supra*, 84 Ill. 2d at 421, relying on *Ulster County Ct., supra* at 159, 167, the Illinois Supreme Court explained the distinction between the evidentiary rule that permits a fact finder to draw all rational inferences from the evidence, and proof beyond a reasonable doubt, as follows:

> "A permissive inference may always be rejected by the fact finder if it chooses to ignore it, and where there is corroborating evidence, the permissive inference is not the sole and sufficient basis for a finding of guilt. It is unnecessary therefore to establish that the inference follows beyond a reasonable doubt from the proved fact, for while it is necessary to prove the elements of an offense beyond a reasonable doubt, that may be done by resort to all the evidence, including the permissive inference. But, where the permissive inference stands unsupported by corroborating circumstances, the leap from the proved fact to the presumed element must satisfy the higher standard — proof beyond a reasonable doubt — for there is nothing else on which to rest the fact finder's verdict of guilt."

The *Ulster County Ct.* analysis of the validity of a permissible inference instruction is independent from an analysis of the sufficiency of the evidence pursuant to *Jackson* v. *Virginia*, 443 U.S. 307 (1979). The former tests whether it is rational to infer an element of the crime from a specific fact and related circumstances, while the latter tests whether such an inference is supported by the record as a whole. Thus, a permissive inference might be invalid even though there is sufficient evidence otherwise to uphold the verdict. The independence of the *Ulster*

doubt. Even if this principle survives the more recent due process decisions cited *supra*, *Crosscup* does not support the majority position because the record here contains no evidence that anyone involved in the defendant's 2009 admission to sufficient facts informed the defendant that his license was suspended for sixty days effective that day. See note 2, *supra*.

*County Ct.* analysis and the *Jackson* v. *Virginia* analysis is clear from the United States Supreme Court's opinion in *Ulster County Ct.* The Court explained that a permissive inference need not meet the more stringent *Jackson* v. *Virginia* standard for the very reason that such an inference is only "one . . . part" of the prosecution's case, and that "the prosecution may rely on all of the evidence in the record to meet the reasonable-doubt standard." *Ulster County Ct.*, 442 U.S. at 166-167. Moreover, notwithstanding the validity of the permissive inference, the Court was careful to observe that the evidence in the record as a whole had been found sufficient to establish guilt beyond a reasonable doubt. *Id.* at 167. Therefore, with respect to an element of the crime, determining that an inference is rational or permissive does not settle whether the verdict is supported by sufficient evidence.

In this case, an inference that the defendant was on notice that his license was suspended for sixty days effective on October 21, 2009, may be natural and possible in keeping with the law of evidence, see Mass. G. Evid. § 302(b) (2013), but such an inference, standing alone, will not bear the weight required to permit the judge to conclude beyond a reasonable doubt that the defendant was on notice on October 21, 2009, that his license was suspended, effective immediately, for sixty days.[4]

b. *Proof beyond reasonable doubt.* Even conceding for the sake of argument that an inference of notice of a license suspension based on a docket entry such as that in exhibit 2 is sufficient to support a finding of notice beyond a reasonable doubt, there is additional evidence in this case that undermines the evidentiary weight of such an inference. The docket entry in its entirety reads as follows: "10-21-2010," "ASAP 24-D," "60 day license loss," and "24Q evaluation." General Laws c. 90, § 24D, as appearing in St. 2003, c. 28, § 13, provides in part that "[u]pon each disposition under this section, the defendant will surrender any Massachusetts drivers license or permit in

---

[4]The Commonwealth relies on *Commonwealth* v. *Beaulieu*, 79 Mass. App. Ct. 100, 103 (2011). However, *Beaulieu* merely stands for the proposition that a certified copy of a prior conviction of OUI is admissible in a prosecution under G. L. c. 90, § 23, to establish the fact of a license suspension. The case does not suggest that the prior conviction is sufficient to prove notice to the defendant, which is the issue in the present case.

his possession to the probation department of that court. The probation department will dispose of the license, and the court shall report the disposition in the case in a manner as determined by the registrar." In this case, there was evidence during the Commonwealth's case that the defendant had a license in his possession when he was pulled over by Officer Patterson on November 26, 2009. The evidence is also that the officer confiscated the defendant's license. There is no indication in the record that the license was counterfeit or a duplicate. If the license was the one the defendant possessed when he admitted to sufficient facts, this suggests a suspension did not occur, or at least that there might have been a failure to comply with the requirements of G. L. c. 90, § 24D, and to inform the defendant that his license was suspended. In such a case, the weight of the inference of notice based on exhibit 2 is diminished, and the evidence does not permit a finding beyond a reasonable doubt on the fourth element of the charged offense.

c. *Due process.* The position I take will not hinder the Commonwealth's ability to prove notice in prosecutions under G. L. c. 90, § 23. When a defendant pleads guilty or admits to sufficient facts to a charge of OUI, the Legislature has determined that public policy requires a judge of that court to effect the suspension of the defendant's license to operate a motor vehicle at the time of disposition. See G. L. c. 90, §§ 24(1)(*b*), 24D. When it is necessary, as in this case, to prove that the defendant was notified of a prior license suspension as an element of a subsequent offense, the Commonwealth has several options. It may produce a copy of the plea hearing transcript to demonstrate that the defendant was put on notice of the license suspension. Alternatively, it may call a witness who was present when the plea or admission took place to testify that the defendant was notified that his license was suspended effective immediately for sixty days. In a case like this in which there was a disposition under G. L. c. 90, § 24D, a probation officer should have personal knowledge of the license suspension as a result of his statutory duty to confiscate the defendant's license. Finally, in keeping with the guidance the Supreme Judicial Court provided in *Commonwealth* v. *Parenteau*, 460 Mass. 1, 10 (2011), the Commonwealth may be able to offer a business record from the

Registry of Motor Vehicles that does not violate the defendant's right to confront witnesses against him or her, as guaranteed by the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, to demonstrate that the defendant was on notice of the license suspension. None of these alternatives was followed in this case.

In all criminal cases, the due process clause of the Fourteenth Amendment to the United States Constitution requires the Commonwealth to shoulder the burden at trial to prove each fact necessary to constitute the crime charged beyond a reasonable doubt. See *Francis* v. *Franklin,* 471 U.S. 307, 313 (1985). I do not believe a docket entry indicating a sixty-day loss of license as part of a disposition under G. L. c. 90, § 24D, is sufficient, without more, to prove beyond a reasonable doubt that the defendant was notified that his license was suspended for sixty days commencing on the date of the disposition, especially when the defendant continues to have possession of a license. Assumptions about what statements judges and clerks typically make about the sentence during a hearing on a change of plea or an admission to sufficient facts is not a substitute for proof beyond a reasonable doubt. Compare *Commonwealth* v. *Wright,* 60 Mass. App. Ct. 108, 111-112 (2003). Cf. *Commonwealth* v. *Croft,* 345 Mass. 143, 145 (1962), quoting from *Commonwealth* v. *O'Brien,* 305 Mass. 393, 400 (1940) ("When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof"). It is a fundamental tenet of our jurisprudence that proof beyond a reasonable doubt is not established simply on the basis of "some record evidence, however slight, to support each essential element of the offense." *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979). Here, the record does not permit a rational fact finder to conclude that on October 21, 2009, or at any time prior to his arrest on November 26, 2009, the defendant was notified that his license was suspended. For these reasons, I respectfully dissent.