NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1978                                       Appeals Court

COMMONWEALTH  vs.  KENNETH I. NORMAN.

No. 13-P-1978.

Worcester.      January 8, 2015. - May 8, 2015.

Present: Grainger, Brown, & Milkey, JJ.

Motor Vehicle, Operating under the influence, License to
     operate. License. Notice. Registrar of Motor Vehicles,
     Records. Practice, Criminal, Required finding.

Indictments found and returned in the Superior Court
Department on November 14, 2012.

The cases were tried before David Ricciardone, J.

Nelson P. Lovins for the defendant.
Ellyn H. Lazar-Moore, Assistant District Attorney, for the
Commonwealth.

MILKEY, J.  Following jury and jury-waived trials in

Superior Court, the defendant was convicted of operating under

the influence of intoxicating liquor (OUI) while under a license

suspension for a prior OUI.[1]  G. L. c. 90, § 23.  On appeal, the

defendant argues primarily that the evidence was insufficient to

support that conviction.  He makes no challenge to the

sufficiency of the evidence that he committed an OUI, that at

the time he did so his license was suspended, and that the

suspension at issue was for a prior OUI.  Instead, he targets

the sufficiency only of the evidence that he was notified of the

suspension.  See Commonwealth v. Oyewole, 470 Mass. 1015, 1016

(2014) (to make out a violation of G. L. c. 90, § 23, the

Commonwealth must prove, inter alia, that the defendant "was

notified that his license had been suspended or revoked").  We

conclude that the evidence was sufficient and therefore affirm

the convictions.

Background.  Given the limited nature of the defendant's

appeal, we lay out only the evidence related to whether the

defendant had notice of his license suspension.  The longtime

branch manager of the Worcester office of the Registry of Motor

Vehicles (RMV) testified that the RMV had a system in place to

provide drivers formal notice that their licenses had been

suspended.  Under that system, once an OUI conviction is entered

---

[1] The defendant was also convicted of OUI, fifth or
subsequent offense.  G. L. c. 90, § 24(1)(a)(1).  As discussed
infra at note 6, he initially challenged that conviction but has
since abandoned that claim.  He has not challenged his
additional conviction of operating negligently so as to
endanger.  G. L. c. 90, § 24(2)(a).

into the relevant database, a suspension notice is automatically generated, and employees in the RMV mailroom then place the notice in an envelope and deliver it to the post office for mailing.  The branch manager also produced from RMV files a "notice of suspension" letter (suspension notice) dated November 8, 2001.  That suspension notice, which was addressed to the defendant at a mailing address on file with the RMV, stated that the defendant's license was being suspended for a ten-year period beginning October 15, 2004.

When the defendant was stopped by police in 2012 for his new OUI violation, he admitted to them that he did not have a license (while providing them his license number).[2]

Discussion.  The defendant bases his insufficiency argument primarily on Commonwealth v. Oyewole, supra.  We proceed to review that case in some detail.

---

[2] In that same conversation, the defendant initially told police that he did have a license.  However, for purposes of assessing sufficiency, we view the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  The jury were entitled to accept the defendant's conversation with police as an admission that he knew he did not have a license.  See Meyer v. Wagner, 57 Mass. App. Ct. 494, 505 (2003) ("It is the job of the jury . . . to weigh conflicting evidence and to draw reasonable inferences . . .").  There is no merit to the defendant's claim that the jury could not make such a finding on the theory that there were two equally plausible competing inferences that could be drawn from testimony.  See Commonwealth v. O'Brien, 305 Mass. 393, 400 (1940).

When the driver in Oyewole was stopped by the police, he "had his license in his possession and gave it to the police officer." Id. at 1017. Noting that drivers who have their licenses suspended are legally required to surrender them to the probation department and that the defendant in that case apparently did not surrender his license, the court observed that "[a] possible reason for this is that nobody notified the defendant that his license was suspended." Ibid. Against this backdrop, the Commonwealth tried to prove that the driver had been notified of his license suspension based solely on a court docket entry from an earlier plea hearing that noted that his license was being suspended. Id. at 1016. The court held that this evidence, by itself, was insufficient to prove beyond a reasonable doubt that the driver had received notice of the suspension. It also commented, in dicta, that the proof would have remained insufficient even if the assumption were made that "the regular practice [of court officials] when accepting a plea" was to provide a defendant notice that his license was being suspended as a result of the plea. Ibid. In the words of the court, "the Commonwealth may not rely on a presumption of regularity as a substitute for evidence proving an element of its case beyond a reasonable doubt." Ibid.

The factual setting of the case before us is markedly different from that of Oyewole. Most important, as noted, the

defendant here admitted to police that he lacked a license (while informing police what his license number was).  We need not decide whether that admission alone provided sufficient proof that he had been notified that his license had been suspended, because of the other evidence that the Commonwealth produced.[3]  To be sure, the fact that a suspension notice existed in RMV files does not by itself prove that it was mailed to the defendant.[4]  The defendant argues that the Commonwealth cannot prove that it mailed this particular suspension notice by providing testimony about the system that the RMV had in place

---

[3] The defendant separately argues that the judge erred in admitting the suspension notice in evidence.  Although the Commonwealth introduced the suspension notice through the testimony of the RMV branch manager, the transcript appears to reveal that the copy of the document was accompanied by a certification/attestation in accordance with G. L. c. 233, § 76, that the RMV provided as to the document's authenticity.  Moreover, after conducting a voir dire to assess the branch manager's knowledge, authority, and role at the RMV with regard to records, the judge concluded that "in her position as branch manager of the Worcester [RMV, the witness] is competent to testify as to the authenticity of [RMV] documentation, such as the certification of suspension and the other documents that pertain to [the defendant]."  The defendant has not shown that the judge abused his discretion in admitting the document.

[4] The Commonwealth need not prove that the defendant in fact received that notice; proof that the RMV properly mailed it is sufficient.  See Commonwealth v. Koney, 421 Mass. 295, 303-304 (1995).  In addition, the Commonwealth need not prove that during the period in which the notice would have been delivered, the defendant was in fact using the mailing address on file with the RMV.  Commonwealth v. Lora, 43 Mass. App. Ct. 136, 144 (1997) (RMV entitled to rely on the accuracy of the address provided to it).

for generating and mailing such notices.  According to him, that testimony amounts to the type of "regular practice" evidence deemed insufficient in Oyewole.  Instead, the defendant contends, the Commonwealth at a minimum had to supply specific proof that the 2001 letter was in fact placed in the mail.[5]

The Oyewole court was not presented with the question whether the Commonwealth could prove that a particular suspension notice in fact had been mailed by relying on testimony regarding the RMV's general notification practices. Moreover, at least some argument can be made that there is a material difference between evidence that the RMV has in place an administrative system for the mailing of suspension notices that were specifically generated for that purpose and the type of "regular practice" evidence deemed insufficient in Oyewole.

In the end, we need not resolve whether the evidence regarding the RMV's mailing practices would have been sufficient on its own, because of the totality of the evidence on notice. As Justice Holmes observed long ago, "[e]vidence which would be colorless if it stood alone may get a new complexion from other facts which are proved, and in turn may corroborate the

---

[5] The defendant separately attacks the testimony about RMV's mailing practices on two other grounds.  First, he argues the witness's testimony about the details of that system was too thin to be of consequence.  Second, he argues that the witness's testimony about the agency's mailing system was all phrased in the present tense instead of documenting what system was in place in 2001 when the notice would have been sent.

conclusion which would be drawn from the other facts."  Commonwealth v. Mulrey, 170 Mass. 103, 110 (1898).  Here, the defendant admitted that he lacked a license, there was a suspension notice addressed to him produced from RMV's files, and there was some testimony regarding the RMV's systematic mailing practices.  We conclude that, taken together, this evidence provided a sufficient basis for a reasonable fact finder to conclude, beyond a reasonable doubt, that the defendant had been notified that his license had been suspended.[6]

Judgments affirmed.

---

[6] As noted, the defendant was also convicted of OUI, fifth or subsequent offense.  G. L. c. 90, § 24(1)(a)(1).  In his brief, he argued that the judge erred in admitting a certified copy of his RMV records to prove his prior convictions without a live witness.  He has since abandoned that claim in light of the case law.  See, e.g., Commonwealth v. Ellis, 79 Mass. App. Ct. 330, 335 (2011).  To the extent that a single sentence in the defendant's brief suggested (without citation) that the Commonwealth had to prove that he was represented by counsel in each of the prior convictions, that contention does not rise to appellate argument that we need consider.  See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).