NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1607                                        Appeals Court

COMMONWEALTH  vs.  JASON WILSON.

No. 14-P-1607.

Plymouth.     March 24, 2016. - September 8, 2016.

Present:  Hanlon, Sullivan, & Maldonado, JJ.

Motor Vehicle, Operating under the influence, License to
     operate.  Notice.  Practice, Criminal, Required finding.


Complaint received and sworn to in the Brockton Division of
the District Court Department on February 16, 2012.

The case was heard by Mary L. Amrhein, J.


Max Bauer for the defendant.
Mary E. Lee, Assistant District Attorney, for the
Commonwealth.


HANLON, J.  After a jury-waived trial in the District

Court, the defendant was convicted of operating a motor vehicle

after his license or right to operate had been suspended for

operating a motor vehicle while under the influence of

intoxicating liquor (OUI).  See G. L. c. 90, § 23, third par.

He appeals, arguing that his motion for a required finding of

not guilty was wrongfully denied because the Commonwealth failed to prove that he had notice that his license had been suspended. We affirm.

At trial, the Commonwealth called one witness and offered one exhibit; the underlying facts are not in dispute. Trooper John Santos of the Massachusetts State Police testified that, on January 30, 2012, at approximately 8 P.M., he was observing traffic on Spark Street on the north side of Brockton. He saw a white Cadillac with a defective tail light and a damaged brake light. He stopped the car and asked the driver for his license and registration. The driver, later identified as the defendant, produced a registration for the car and said that his name was Jason Wilson. He also told the trooper his date of birth and current address. He never produced a Massachusetts driver's license. The trooper, after checking with the Registry of Motor Vehicles on his "mobile data terminal," gave the defendant a summons for the civil motor vehicle infractions and also for "operating with a suspended license."

After the trooper's testimony, the Commonwealth offered a certified copy of a docket sheet, number 1106 CR 2028, showing that on January 11, 2012, nineteen days before the defendant was stopped by Trooper Santos, the defendant had appeared in the West Roxbury Division of the Boston Municipal Court and admitted that there were facts sufficient to support a finding of guilty

on a charge of OUI in violation of G. L. c. 90, § 24(1)(a)(1) (count 1); and operating a motor vehicle after his license or right to operate had been suspended, in violation of G. L. c. 90, § 23 (count 2). In addition, the defendant had pleaded guilty to leaving the scene of an accident after causing personal injury, in violation of G. L. c. 90, § 24(2)(a 1/2)(1) (count 3).

The docket sheet in that case indicates that on count 1, the OUI charge, the defendant received a continuance without a finding for one year, with conditions of probation including completion of the G. L. c. 90, § 24D, program, payment of certain fees, and a "45 day LOL" (loss of license). On count 3, the leaving the scene after causing personal injury conviction, the defendant received a concurrent sentence of probation, with the notation "loss of lic. as by law."[1]

---

[1] Under the pertinent statute, the defendant's license would have been revoked for at least one year on count 3. General Laws c. 90, § 24(2)(b), as amended through St. 1996, c. 450, § 137, provides, in pertinent part:

> "A conviction of a violation of paragraph (a) or paragraph (a 1/2) of subdivision (2) of this section shall be reported forthwith by the court or magistrate to the registrar, who may in any event, and shall unless the court or magistrate recommends otherwise, revoke immediately the license or right to operate of the person so convicted, and no appeal, motion for new trial or exceptions shall operate to stay the revocation of the license or right to operate."

General Laws c. 90, § 24(2)(c), as appearing in St. 1991, c. 460, § 4, provides, in pertinent part:

In order to obtain a conviction in the present matter, "the Commonwealth was obligated to prove, beyond a reasonable doubt, (1) that the defendant operated a motor vehicle; (2) that at the time of that operation the defendant's license was revoked or suspended; (3) that the license suspension or revocation was pursuant to a violation of one of the specified statutory sections (including [OUI] in violation of G. L. c. 90, § 24[1][a]); and (4) that the defendant was notified that his license had been suspended or revoked." Commonwealth v. Oyewole, 470 Mass. 1015, 1016 (2014) (quotation omitted).

In Oyewole, the court described the following facts.

"In October, 2009, the defendant admitted to sufficient facts to support a finding of guilty on a charge of operating while under the influence of liquor (OUI case). According to the docket sheet from that case, his license was suspended for sixty days. Less than sixty days later, a Wilmington police officer, observing that a motor vehicle had its headlights off at 12:30 A.M., stopped the vehicle. The defendant was the driver and only occupant of the vehicle. The officer requested the defendant's license, which the defendant produced. The officer

---

"The registrar, after having revoked the license or right to operate of any person under paragraph (b), . . . may, after an investigation or upon hearing, issue a new license or reinstate the right to operate to a person convicted in any court for a violation of any provision of paragraph (a) or (a 1/2) of subdivision (2); provided, however, that no new license or right to operate shall be issued by the registrar to: (i) any person convicted of a violation of subparagraph (1) of paragraph (a 1/2) until one year after the date of revocation following his conviction if for a first offense . . . ."

confiscated the license and placed the defendant under arrest."

Id. at 1015-1016.

The Oyewole court concluded that the evidence was sufficient to prove that the defendant had operated a motor vehicle after his license or right to operate had been suspended for operating under the influence.  However, even considering the evidence in the light most favorable to the Commonwealth, "[a]s to the fourth element, . . . the evidence presented at trial, together with all reasonable and possible inferences that might properly be drawn from it, was insufficient to permit a reasonable fact finder to find, beyond a reasonable doubt, that the defendant had been notified of the license suspension."  Id. at 1016.

The court noted that there was no evidence in the record that the docket sheet had been shown to the defendant, or that the sentence was announced in open court.  "There was also no evidence that the defendant acknowledged, at the time of the stop or at any other time, that he was aware of the suspension. Moreover, the evidence showed that when he was stopped, the defendant had his license in his possession and gave it to the police officer.  When a license is suspended in connection with a conviction for operating while under the influence, G. L. c. 90, § 24D, fourth par., requires that the license be

surrendered to the probation department. Here, however, the defendant apparently did _not_ surrender his license. A possible reason for this is that nobody notified the defendant that his license had been suspended." (Footnote omitted.) _Id_. at 1016-1017.

In the present case, too, the evidence clearly was sufficient to prove that the defendant was operating a motor vehicle and that his license to operate had been suspended for operating under the influence; the defendant does not contend otherwise. The only question is whether the court's analysis in _Oyewole_ is distinguishable on the facts, or whether the holding in that case compels us to reverse the conviction and enter a finding of not guilty.[2] We are persuaded that _Oyewole_ is distinguishable and we therefore affirm.[3]

Here, the defendant did _not_ present a license when he was stopped by the trooper; that fact undermines any inference that

---

[2] This case was tried before _Oyewole_ was released.

[3] In _Commonwealth_ v. _Norman_, 87 Mass. App. Ct. 344 (2015), this court determined that the defendant had sufficient notice of his license suspension, and affirmed his conviction of OUI while his license was suspended for a prior OUI. In that case, the Commonwealth offered evidence that the defendant had admitted to the police officer at the time of the stop that he didn't have a license, although he provided a license number. A Registry of Motor Vehicles representative also described the process used to notify a driver of license suspension, and produced a copy of a "notice of suspension" letter sent to the mailing address on file for the defendant. _Id_. at 345. The facts of this case fall somewhere between _Oyewole_ and _Norman_.

no one ever seized the defendant's license when it was suspended at the time of his earlier admission and sentencing on count 1, the OUI charge. In addition, and significantly, in Oyewole, the defendant's prior conviction had been for only an OUI. Nothing in the facts of that case indicates that Oyewole was aware that his license had ever been suspended. In this case, by contrast, the defendant had also admitted nineteen days earlier to sufficient facts on count 2, the charge of operating a motor vehicle after his license had been suspended. It is a fair inference that prior to the defendant's admission, the charge of operating after suspension was read to him, and also that there was record support that either the judge or the defendant's lawyer had explained the elements of the offense to him, or that the prosecutor had read for the record the underlying facts supporting the admission. See Commonwealth v. Ubeira-Gonzalez, 87 Mass. App. Ct. 37, 39 (2015), quoting from United States v. Broce, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence"). In addition, the defendant had admitted under oath while tendering his plea that the underlying facts were sufficient to support a finding of guilty of operating after suspension. He does not contend otherwise now.

Surely, then, it is fair also to infer that this defendant, having been placed on notice at his admission hearing, only nineteen days earlier, that his license had, in fact, been suspended at the time of the underlying offense, was aware that his license was still suspended at the time of the stop at issue here -- at least in the absence of any indication from any source that the license had been restored.[4]  Cf. Commonwealth v. Boris, 317 Mass. 309, 315 (1944) ("A man's intention or knowledge is a matter of fact which ordinarily cannot be proved by direct evidence and resort frequently must be had to proof by inference").

We are satisfied that the evidence was sufficient to meet the Commonwealth's burden of proof.

Judgment affirmed.

---

[4] Indeed, as the Commonwealth notes, given the defendant's plea on the charge of leaving the scene of an accident after causing personal injury, his license could not have been reinstated at the time he was stopped on the present offense. See note 1, supra.

SULLIVAN, J. (dissenting).  The issue before us is not whether the defendant knew his license could be suspended for a motor vehicle violation.  Clearly, he did.  The issue is whether the Commonwealth has proven beyond a reasonable doubt that the defendant had been notified, as of January 30, 2012, that his license had been suspended for forty-five days on January 11, 2012.  See G. L. c. 90, § 23.  The trial judge, relying on the now overruled Appeals Court decision in Commonwealth v. Oyewole, 84 Mass. App. Ct. 669 (2014), and without the benefit of the subsequent rescript opinion in Commonwealth v. Oyewole, 470 Mass. 1015 (2014) (Oyewole), acceded to the Commonwealth's argument that the docket sheet of the January 11, 2012, plea was proof enough, and denied the motion for required finding.  Oyewole has since instructed that a docket sheet that does not state that the defendant was notified of his license suspension does not, standing alone, prove notice.  Id. at 1016.  Here, neither the addition of the previous plea, nor the missing license, in the context of this bare evidentiary record, is enough to satisfy the burden of proving actual or constructive notice of license suspension beyond a reasonable doubt.  Because I understand Oyewole to require more, I respectfully dissent.

"[T]he Commonwealth was obligated to prove, beyond a reasonable doubt, . . . that the defendant was notified that his license had been suspended or revoked."  Commonwealth v.

Oyewole, supra at 1016 (quotation omitted).  The element of notice under G. L. c. 90, § 23, can be established in two ways: (1) by proof that the defendant had actual or constructive knowledge of the suspension of his license, see Commonwealth v. Deramo, 436 Mass. 40, 51 (2002); Oyewole, supra at 1016, and/or (2) by proof that notice of suspension or revocation of his right to operate a motor vehicle "has been issued [by the registrar of motor vehicles] and received by such person or by his agent or employer."  G. L. c. 90, § 23, third par., as appearing in St. 1986, c. 620, § 3.  See Commonwealth v. Crosscup, 369 Mass. 228, 231-232 (1975).  When the Commonwealth proves notice to a defendant by means of proof of notice by the registry, it need not prove that the defendant had actual knowledge of the suspension, so long as there is admissible evidence of mailing and receipt as set forth in the statute. See id. at 242 (proper mailing is prime facie evidence of receipt); Commonwealth v. Koney, 421 Mass. 295, 303-304 (1995) (same; proof of actual receipt not required); Commonwealth v. Lora, 43 Mass. App. Ct. 136, 144 (1997) (registry may rely on the accuracy of address provided).  See generally Commonwealth v. Royal, 89 Mass. App. Ct. 168, 173-175 (2016) (methods of proving mailing and receipt).  There was, however, no proof of mailing to the defendant and receipt in this case, and the Commonwealth therefore was obligated to prove actual or

constructive knowledge. See Oyewole, supra at 1016-1017. Contrast Commonwealth v. Norman, 87 Mass. App. Ct. 344, 346-347 (2015).

Viewing the record in the light most favorable to the Commonwealth, see Oyewole, supra at 1016 & n.2, the evidence from which actual or constructive knowledge could be inferred is as follows. On January 11, 2012, the defendant admitted to sufficient facts to support a finding of guilty on charges of operating while under the influence of alcohol (OUI) and operating after his license had been suspended, and pleaded guilty to leaving the scene of personal injury. Each of these three offenses took place on October 7, 2011. There was no evidence of when or for what the license suspension underlying the October 7, 2011, charge was imposed, or the length of that previous license suspension.

According to the docket sheet from the January 11, 2012, plea, the defendant's license was suspended for forty-five days on the OUI charge, and "as by law" on the leaving the scene charge.[1] There is no notation in the docket that the defendant was notified of the suspension in open court. When the defendant was stopped by Massachusetts State Trooper John Santos less than forty-five days later, on January 30, 2012, he was

---

[1] The docket indicates a sentence of "concur" on the charge of operating with a suspended license, which was continued without a finding.

asked for his driver's license and registration. The defendant identified himself as Jason Wilson and handed over the registration. The trooper testified that the defendant "didn't have a driver's license on him." The defendant did not admit that he didn't have a license. There was no evidence that his license was taken by the court or the registry for this or any previous offense. The defendant was not arrested.

In Oyewole, the Supreme Judicial Court held that while a docket sheet "permits an inference that the defendant was present when his license was suspended," the docket sheet alone is not evidence "that the suspension was communicated to him." Oyewole, supra at 1016. Here, as in Oyewole, "[t]he docket sheet itself does not state that the defendant was notified of the suspension. The Commonwealth did not present evidence that the judge in the [January 11] case announced the suspension in open court. [Footnote omitted.] There is no evidence in the record that the docket sheet was shown to the defendant or that any other written notification was sent to him. . . . There was also no evidence that the defendant acknowledged, at the time of the stop or at any other time, that he was aware of the suspension" at the time of the offense in question. Ibid.

Here, the previous suspension underlying the January 11, 2012, plea, even when coupled with the absence of a license at the time of the stop, does not constitute proof beyond a

reasonable doubt that on January 30, 2012, the defendant knew his license was suspended. While there was evidence that the defendant admitted, on January 11, 2012, that his license was suspended on October 7, 2011, there was no evidence that the suspension in effect on October 7, 2011, was still in effect on January 30, 2012, when he was stopped by Trooper Santos. The fact that the defendant admitted that he drove in October of 2011 with a suspended license was not a substitute for proof of actual or constructive knowledge that his license either remained or was newly suspended on January 30, 2012.

As to the license, the evidence at trial was that the defendant did not have his driver's license "on him." He did not admit that he did not have one. Contrast Commonwealth v. Norman, 87 Mass. App. Ct. at 347. The only way to fill the evidentiary gap is by making the inferential leap that the defendant had notice of the suspension because his license was taken or surrendered either at the time of the January 11, 2012, plea, or at some other time not evident in the record. One might surmise that the defendant's license was taken by the court at the time of the January 11, 2012, plea, pursuant to the G. L. c. 90, § 24D, disposition on the OUI charge.[2] This surmise

---

[2] General Laws c. 90, § 24D, fourth par., as appearing in St. 2003, c. 28, § 13, provides, in pertinent part:

would rise to the level of permissible inference only if there is some evidence to undergird it.  See Commonwealth v. Dinkins, 440 Mass. 715, 720-721 & n.8 (2004) (inference must be both reasonable and possible).  The fact that a court may take a license after a plea is not a commonsense deduction based on common knowledge; rather it flows from specialized knowledge of the law and the facts of which proof is required.  Cf. Commonwealth v. Byfield, 413 Mass. 426, 429-430 (1992).  Those familiar with the law also would know that the registry, after notice, is supposed to demand surrender of the license.[3]  Again, this is not common knowledge, and the inference that the registry in fact demanded surrender of this defendant's license lacks any support in the record.  Compare Commonwealth v. Deramo, 436 Mass. at 50-51; Commonwealth v. Royal, 89 Mass. App. Ct. at 170-172.  Contrast Commonwealth v. Norman, supra at 345. No evidence of either scenario was placed before the fact finder, and any finding of actual or constructive notice

---

"Upon each disposition under this section, the defendant will surrender any Massachusetts drivers license . . . in his possession to the probation department of that court."

Compare G. L. c. 90, §§ 24(1)(b), 24N.

[3] When the registrar suspends a license, the registrar follows the notice procedures set out in G. L. c. 90, § 22, culminating in a notice directing the driver to surrender his license to the registry.  See Commonwealth v. Crosscup, 369 Mass. at 229.  Whether the driver has been so notified and has done so is a matter of proof.  See id. at 242; Commonwealth v. Norman, supra at 346-347.

therefore would have been speculation with respect to this defendant. The absence of the license is as infirm as the bare docket in Oyewole.[4] Neither, without more, demonstrates that the suspension was communicated to the defendant, and the presumption of regularity may not, as a matter of law, fill the void. 470 Mass. at 1016.[5]

This reasoning is consistent with cases applying the notice provisions of other statutes. For example, when a temporary abuse prevention order is issued pursuant to G. L. c. 209A, § 4, the court "shall immediately thereafter notify the defendant that the temporary orders have been issued." Ibid., as appearing in St. 1990, c. 403, § 4. Although the statute provides for service by a law enforcement officer, see G. L. c. 209A, §§ 4, 7, "[p]ersonal service is not required . . . if the Commonwealth can show the defendant had actual or constructive knowledge of the existence and terms of the court

---

[4] In Oyewole, the driver had a driver's license in his possession at the time of the stop. I understand Oyewole to treat the presence of the license as additional grounds to vacate the conviction, but not a dispositive or necessary factor in concluding that the evidence was insufficient. See id. at 1017 ("In sum, the record contains no evidence demonstrating that the defendant was notified of the license suspension, and some evidence suggesting the contrary"). I agree with the majority that this case lies somewhere between Oyewole and Norman.

[5] In any event, there was no evidence of the regular practice here. Compare Commonwealth v. Norman, 87 Mass. App. Ct. at 347.

order." Commonwealth v. Molloy, 44 Mass. App. Ct. 306, 308 (1998), citing Commonwealth v. Delaney, 425 Mass. 587, 592 (1997), cert. denied, 522 U.S. 1058 (1998).[6]

In Commonwealth v. Melton, 77 Mass. App. Ct. 552, 556 (2010), we held that proof of notice of an ex parte restraining order was sufficient where there had been a telephone conversation between the defendant and the victim, initiated by the defendant, during which the victim asked the defendant why he was calling her and said, "[T]here's a restraining order." Similarly, in Commonwealth v. Mendonca, 50 Mass. App. Ct. 684, 688 (2001), we reasoned that even assuming a failure of service, the defendant's actual knowledge of the terms of the order was established by evidence that the victim told the defendant "a few times" that he was not supposed to call, the defendant's response that he "'didn't believe' in restraining orders," and the victim's daughter corroborated the conversation.

---

[6] See also Instruction 6.720 of the Criminal Model Jury Instructions for Use in the District Court (rev. May, 2011), Violation of an Abuse Prevention Order ("In order to prove the defendant guilty of this offense, the Commonwealth must prove . . . beyond a reasonable doubt . . . [t]hat the defendant knew that the pertinent term(s) of the order (was) (were) in effect, either by having received a copy of the order or by having learned of it in some other way"); Instruction 6.740 of the Criminal Model Jury Instructions for Use in the District Court (rev. May, 2014), Violation of a Harassment Prevention Order ("In order to prove the defendant guilty of this offense, the Commonwealth must prove . . . beyond a reasonable doubt . . . [t]hat the defendant knew that the pertinent term(s) of the order (was) (were) in effect, either by having received a copy of the order or by having learned of it in some other way").

Conversely, in Commonwealth v. Molloy, 44 Mass. App. Ct. at 309, the evidence of actual or constructive notice of the extension of a restraining order was insufficient where the order in question had not been served on the defendant, and nothing in the extension order he had received placed him on notice that it could be further extended in his absence, if he failed to appear at an extension hearing. And, in Commonwealth v. Welch, 58 Mass. App. Ct. 408, 409-411 (2003), we held that there was insufficient evidence of a violation of an extended abuse prevention order where there was no evidence that either the order or an earlier ex parte order had been served, and the alleged victim's testimony concerning her telephone conversations with the defendant were so void of detail that the evidence was insufficient to prove that the defendant had actual knowledge of the terms of the order or was put on sufficient notice to make reasonable inquiry concerning the issuance and terms of the order.[7]

---

[7] Contrast Commonwealth v. Delaney, supra, where the ex parte temporary restraining order was served on the defendant by leaving it at his last and usual place of abode. The temporary order provided notice that it could be extended if the defendant failed to appear at a hearing at a time, date, and place specified in the order. When the defendant failed to appear, the temporary order was extended for one year. Although the extended order was not served on the defendant, the court held that the ex parte order, which stated that the order could be extended if he did not appear at a hearing, put the defendant on notice, and, further, that his actual receipt of the ex parte order, together with his testimony that he knew, at the relevant

As these cases demonstrate, the salient issue is not what the defendant may have known, but what the Commonwealth proved he knew.[8]  Because the evidence of notice presented here did not rise to the level of proof beyond a reasonable doubt, see generally Commonwealth v. Ruano, 87 Mass. App. Ct. 98, 103 (2015), the conviction may not stand.

For these reasons, I respectfully dissent.

---

time, that there was a protective order against him, "warrant[ed] the conclusion that the defendant had actual knowledge of the terms of the extended order."  425 Mass. at 592-593.  Here, unlike in Delaney, the evidentiary void is such that there is no basis to raise the question of wilful blindness or deliberate avoidance.  See id. at 592.

[8] Our oft-cited and familiar Latimore standard, see Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), rests upon Jackson v. Virginia, 443 U.S. 307, 318-319 (1979), a case which carefully articulated the rationale underlying the adoption of the requirement of proof beyond a reasonable doubt.  Jackson, supra at 315.  The vitality of this rationale has recently been reemphasized.  See Commonwealth v. Russell, 470 Mass. 464, 474 (2015).